U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
Signed April 2, 2008                                        **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Danny Ray Braune and | § | |
| Nancy Faye Braune, | § | Case No. 05-44960-DML-13 |
| | § | |
| Debtors. | § | |

### <u>MEMORANDUM OPINION</u>

Before the court are (1) Trustee's Modification of Chapter 13 Plan After Confirmation

(the "Modification"), filed by the chapter 13 trustee ("Trustee"), and (2) an objection to the

Modification, filed by Danny Braune and Nancy Braune (collectively, "Debtors"). On January

17, 2007, the court held a hearing on the Modification. At the hearing, the court heard oral

argument, after which the court informed counsel for the parties of its intent to take the matter

under advisement.[1]

---

[1]     The court also provided counsel to the parties the opportunity to submit informal letter briefs. Trustee's
letter brief refers to his previous oral argument and the principal case upon which he relies, _In re Launza_,

The court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (L) and (O). This memorandum opinion embodies the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052 and 9014.

## I. Background

Nancy Braune was the alleged victim of fraud in the purchase of her home from KB Homes. Believing her injury to be common among similar homeowners, Nancy Braune filed a class action lawsuit against KB Homes in the 141st District Court in Tarrant County, Texas (the "Lawsuit").[2]

On May 12, 2005, while the Lawsuit was still pending, Debtors filed a joint petition seeking relief under chapter 13 of the Bankruptcy Code (the "Code").[3] On May 27, 2005, Debtors filed their Schedules A-J. In doing so, Debtors failed to list the Lawsuit as an asset on their Schedule B and failed to claim any future recovery from the Lawsuit as exempt on their Schedule C.[4] On October 19, 2005, Debtors filed an amended Schedule B (the "Amended Schedule B"), listing the Lawsuit as a contingent, unliquidated asset. Amended Schedule B, Item 20.

On June 28, 2006, the court confirmed Debtors' amended chapter 13 plan (the "Plan"). Under the Plan, Debtors proposed to make payments totaling $32,790, providing a 0% return to

---

337 B.R. 286 (Bankr. N.D. Tex. 2005). Debtors' counsel provided an informal letter brief encompassing his arguments and supporting authority. The facts in this case are undisputed.

[2]   *Nancy Kelley vs. KB Home*, No. 141-190143-01 (141st Dist. Ct., Tarrant County, Tex. 2007). Between filing the Lawsuit and commencing this chapter 13 case, Nancy Braune divorced Kenneth Kelley and married Danny Braune. *See* Am. Statement Financial Affairs at question 16.

[3]   11 U.S.C. §§ 101 et seq.

[4]   *See* Schedule B, Item 20 and Schedule C at 1.

unsecured creditors. Neither the Plan nor the order confirming the Plan made any mention of the Lawsuit.[5]

In June 2007, a settlement agreement (the "Settlement") was reached between Nancy Braune and KB Homes in connection with the Lawsuit. As part of the Settlement, Nancy Braune received a lump-sum payment of $31,721.[6] On September 5, 2007, believing Nancy Braune's homestead exemption attached to the proceeds of the Settlement, Debtors amended their Schedule C (the "Amended Schedule C") to reflect their claim that $18,450 from the payment is exempt under Code § 522(d)(1) and $13,271 from the payment is exempt under Code § 522(d)(5).[7]

Now, through the Modification, Trustee proposes that Debtors add $24,731.93 of the payment (the "Settlement Proceeds") to the Plan, providing a 100% return to unsecured creditors.[8] Debtors, on various bases, object to the Modification.[9]

## II. Discussion

In support of the Modification, Trustee argues that Debtors must pay the Settlement Proceeds into the Plan in order to satisfy Code § 1325(b)(1)'s "disposable income test." In the alternative, Trustee contends that Debtors' exemptions, though valid, do not prevent the Settlement Proceeds from being paid into the Plan. Accordingly, the court must first decide

---

[5]    Order Confirming Final Chapter 13 Plan, Valuing Collateral, & Allowing Debtor's Atty's Fees at 1.

[6]    Most of the terms of the Settlement cannot be disclosed because the Settlement was placed under seal due to a confidentiality clause contained therein. *See* Order Approving Mot. File Docs. Under Seal at 1 (entered Aug. 6, 2007).

[7]    Amended Schedule C at 1.

[8]    The Modification also proposes to reduce the payment period to thirty-one months. Modification ¶ 9.

[9]    The court notes that Debtors commenced their chapter 13 case on May 12, 2005. The court therefore applies the Code as it read prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

whether the disposable income test applies to the Modification; the court will then address Trustee's alternative argument.

## A. Modification: A Brief Overview

In relevant part, section 1329 allows a trustee, debtor or unsecured creditor to request that the court modify a previously confirmed chapter 13 plan to "increase . . . the amount of payments on claims of a particular class provided for by a plan . . . ." Code § 1329(a)(1). To receive court approval, however, the modification must comply with the confirmation requirements set forth in section 1325(a). Code § 1329(b)(1). Although section 1329 does not expressly state that a postconfirmation modification must satisfy the disposable income test, a majority of courts (including this court) have held that a modification of this nature must satisfy Code § 1325(a)(1),[10] which (at least if the modification is proposed by the debtor) indirectly necessitates compliance with the disposable income test. *See In re Nahat*, 315 B.R. 368, 377 (Bankr. N.D. Tex. 2004); *In re Solis*, 172 B.R. 530, 532 (Bankr. S.D.N.Y. 1994); *In re Martin*, 232 B.R. 29, 36-37 (Bankr. D. Mass. 1999).

## B. Applicability of the Disposable Income Test

To determine whether the Settlement Proceeds are subject to the disposable income test, the court must first look to the language of the statute and the provisions that surround it. "It is a universally recognized rule of statutory construction that a court should look to the language of the statute to determine the legislative purpose." *In re Stalvey & Assocs., Inc.*, 750 F.2d 464, 470 (5th Cir. 1985) (quoting *SEC v. Ambassador Church*, 679 F.2d 608, 611 (6th Cir. 1982)). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its

---

[10] Section 1325(a)(1) requires the plan or postconfirmation modification to conform to the "provisions of this chapter and with other applicable provisions of this title." 11 U.S.C. § 1325(a)(1).

drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240-42 (1989) (quoting *Griffin*

*v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

Accordingly, the court must examine the disposable income test and section 1325(b)(1).

Section 1325(b)(1) states:

> (1) *If the trustee or the holder of an allowed unsecured claim objects* to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim;
>
> *or*
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1) (emphasis added). Put another way, if either the chapter 13 trustee or an

unsecured creditor objects to confirmation of a plan or modification, the court may not confirm

the plan or the modification unless (1) the plan or the modification satisfies unsecured claims in

full; or (2) all of the debtor's disposable income will be included in the plan to pay creditors. *Id.*;

*see also In re Nahat*, 315 B.R. at 377.

It is clear that, if no objection to confirmation is interposed, the plan may be confirmed

whether or not it provides for full payment of creditors or "that all of the debtor's projected

disposable income . . . will be applied to make payments under the plan." *See Smith v. ITT Fin.*

*Servs. (In re Smith)*, 100 B.R. 436, 439 (S.D. Ind. 1989); *In re Davis*, 68 B.R. 205, 208-09

(Bankr. S.D. Ohio 1986). Thus, applying the plain language of section 1325(b)(1) to the case at

bar, the court holds the Modification is not subject to the disposable income test. In the context

of modification, the disposable income test applies only when either the chapter 13 trustee or an

unsecured creditor objects to the modification pursuant to Code § 1325(b)(1).[11] In the instant case, neither Trustee nor any unsecured creditor has objected to the Modification. Rather, *Trustee* proposed the Modification, and *Debtors* objected.

In light of the potential constitutional problems[12] that might arise from allowing proposal of income disposition by the chapter 13 trustee or a creditor, as opposed to interposition by either of an objection to confirmation of the debtor's plan, construing section 1325(b)(1) in accordance with its plain meaning does not lead to an absurd result. Thus, given that the plain language of Code § 1325(b)(1) provides the disposable income test applies only when either the trustee or an unsecured creditor objects, the court finds Trustee's first argument unpersuasive.

**C. In re Launza**

Turning to Trustee's argument in the alternative, Trustee contends that Debtors' exemptions under Code § 522(d)(1) and (5) do not have the effect of preventing the Settlement Proceeds from being paid into the Plan. In making this argument, Trustee relies on Judge Houser's opinion in *In re Launza*. In *In re Launza*, Judge Houser sustained a chapter 13 trustee's objection to confirmation of a plan proposing no return to unsecured creditors because debtors' settlement proceeds, though exempt, constituted income subject to the disposable income test. *In re Launza*, 337 B.R. 286 (Bankr. N.D. Tex. 2005). In coming to this decision, Judge Houser relied on section 1325(b)'s plain meaning (i.e., the absence of language referring to section 522(c)) and two principles: exemptions are not as important to chapter 13 debtors (as compared

---

[11] The language of section 1325(b)(1) could be interpreted to require application of the disposable income test to any modification of a plan the initial confirmation of which was objected to by the trustee or an unsecured creditor as required by that section, though the court has found no case so holding. As confirmation of the Plan was not so objected to, the court need not decide whether such a reading of the statute is appropriate.

[12] *See Toibb v. Radloff*, 501 U.S. 157, 165 (1991).

to chapter 7 debtors) and retention of exempt property while receiving a broad chapter 13 discharge results in unfairness. *Id*. at 290.

Although the policy arguments articulated by Judge Houser in *In re Launza* might arguably have some applicability in this case, *In re Launza* is clearly distinguishable. Most significantly, in *In re Launza* an objection to confirmation was made by the trustee; thus 1325(b)(1) was triggered. *See id.* at 288. Moreover, Judge Houser was resolving an issue regarding the interaction of sections 522(c) and 1325(b)(1), not addressing the ability of a chapter 13 trustee to impose section 1325(b)(1) on a debtor through a modification. *See id.* at 290. Finally, as discussed below, the court does not need even to reach the question of whether or not the Settlement Proceeds are exempt.

**D. Res Judicata**

Finally, the Settlement Proceeds cannot now be turned to the benefit of unsecured creditors because of the doctrine of res judicata. The Settlement Proceeds resulted from the Lawsuit, which was disclosed prior to confirmation of the Plan. The Lawsuit was not at that point designated by Debtors as exempt. The Lawsuit thus was necessarily included in the calculation under section 1325(a)(4) of the Code of whether creditors would receive at least as much under the Plan as they would receive in a chapter 7 liquidation.

Trustee submitted to the court an order confirming the Plan by which he effectively represented that the Plan met the test of section 1325(a)(4). Trustee or the court might have required, through the confirmation order, that any proceeds of the Lawsuit be dedicated to payment of unsecured creditors. This was not done; rather, apparently valuing the claim at zero, Trustee and the court allowed Debtors to retain the claim for their own benefit.

Trustee now seeks a second bite at the apple, for, in fact, the Modification seeks to correct for the failure of the Plan, as originally confirmed, to meet the so-called best interest of creditors test of section 1325(a)(4). Trustee is precluded, however, by the doctrine of res judicata from now revisiting the best interests test, at least to the extent he might have raised the same issue then that he does now. It is well settled that an issue that could have or should have been raised in connection with the confirmation of a plan is res judicata by virtue of a confirmation order. *See Eubanks v. FDIC*, 977 F.2d 166, 173 (5th Cir. 1992); *In re Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990) ("The law in this circuit is well settled that a plan is binding upon all parties once it is confirmed and all questions that could have been raised pertaining to such plan are res judicata."); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987). Although these cases are chapter 11 cases, the doctrine of res judicata applies equally with respect to orders confirming chapter 13 plans. *See In re Chappell*, 984 F.2d 775, 781 (7th Cir. 1993) (citing *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983)); *In re Rincon*, 133 B.R. 594, 596 (Bankr. N.D. Tex. 1991); *In re Euler*, 251 B.R. 740, 746 (Bankr. M.D. Fla. 2000).

The case at bar is the mirror image of one recently decided by this court. In *In re Williams*, No. 05-47644-DML-13, 2007 WL 4522326 (Bankr. N.D. Tex. Dec. 19, 2007), the debtor sought to modify his plan to reduce the return to unsecured creditors by claiming as exempt an asset that was included in the calculation of the best interests test of section 1325(a)(4) at the time of confirmation of the original plan. The court held in *Williams* that the debtor was precluded by the doctrine of res judicata from proposing a modification based on a claim of exemption that could and should have been asserted at the time of confirmation of the original plan. Here, Trustee could and should have asserted at confirmation of the Plan that

proceeds of Debtors' claim must be added to amounts to be paid under the Plan.  Having failed

to do so, Trustee cannot now cure the failure by readdressing the issue.[13]

### III.  Conclusion

In sum, the court finds the Settlement Proceeds are not subject to the disposable income

test, and Trustee is precluded from requesting the Settlement Proceeds be paid into the Plan.  For

the foregoing reasons, the court SUSTAINS Debtors' objection.  The Modification is DENIED.

It is so ORDERED.

# # # # END OF OPINION # # # #

---

[13]    The special importance of finality in the context of plan confirmation is demonstrated by Code § 1330(a), which limits revocation of confirmation orders to instances where confirmation was obtained by fraud, and the parallel language of Fed. R. Bankr. P. 9024, limiting the applicability of Fed. R. Civ. P. 60(b) to confirmation orders.